1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RUBEN LUGO,                              )   1:12-cv-00356 MJS HC
                                        )
                    Petitioner,          )   ORDER DISMISSING PETITION FOR
                                        )   WRIT OF HABEAS CORPUS
        v.                               )
                                        )   (Doc. 1)
                                        )
MIKE STAINER, Warden, et al.,            )
                                        )
                    Respondents.         )
_____)

        Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has

consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

**I.      BACKGROUND**

        Petitioner is currently in the custody of the California Department of Corrections. On

May 26, 2009, the Institutional Gang Unit concluded that there was sufficient evidence to

validate Petitioner as an associate of the 'Mexican Mafia (EME)' prison gang. (Pet. at 67, ECF

No. 1.)  Petitioner asserts that the validation process violated his constitutional rights. (Id. at

4-6.)

///

1    **II.**     **DISCUSSION**

2           **A.**     **Screening Standard**

3           Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

4    petition if it "plainly appears from the petition and any attached exhibits that the petitioner is

5    not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254

6    Cases.

7           The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an

8    answer if the motion attacks the pleadings for failing to exhaust state remedies or being in

9    violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

10   Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

11   remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

12   grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp.

13   1189, 1194 & n. 12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss

14   after the court orders a response, and the Court should use Rule 4 standards to review the

15   motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

16          Moreover, the Advisory Committee Notes to Rule 8 of the Rules Governing Section

17   2254 Cases indicates that the court may dismiss a petition for writ of habeas corpus either on

18   its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an

19   answer to the petition has been filed. See, e.g., Miles v. Schwarzenegger, 2008 U.S. Dist.

20   LEXIS 72056, 2008 WL 3244143, at *1 (E.D. Cal. Aug. 7, 2008) (dismissing habeas petition

21   pursuant to respondent's motion to dismiss for failure to state a claim). However, a petition for

22   writ of habeas corpus should not be dismissed without leave to amend unless it appears that

23   no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d

24   13, 14 (9th Cir. 1971).

25          **B.**     **Cognizability of Petitioner's Claim**

26                 1.     Habeas Corpus Jurisdiction

27          A writ of habeas corpus is the appropriate federal remedy when "a state prisoner is

28   challenging the very fact or duration of his physical imprisonment, and the relief he seeks is

U.S. District Court
E. D. California

1  a determination that he is entitled to an immediate or speedier release from that

2  imprisonment." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Challenges to prison

3  disciplinary convictions in which the inmate has lost time credits must be raised in a federal

4  habeas corpus action unless the credits have been restored or the disciplinary conviction set

5  aside. Edwards v. Balisok, 520 U.S. 641, 644 (1997). Federal habeas corpus jurisdiction also

6  exists when a prisoner seeks "expungement of a disciplinary finding from his record if

7  expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884

8  F.2d 1267, 1269 (9th Cir. 1989) (citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir.

9  1982)); see also Docken v. Chase, 393 F.3d 1024, 1028-29, 1031 (9th Cir. 2004) (challenging

10  state parole board's refusal to provide petitioner with annual review of his suitability for parole).

11  In Docken v. Chase, the Ninth Circuit clarified Bostic's definition of the word "likely" in

12  this context. 393 F.3d at 1031. Expungement of a disciplinary finding is "likely" to accelerate

13  a prisoner's eligibility for parole when his claim has "a sufficient nexus to the length of

14  imprisonment so as to implicate, but not fall squarely within the 'core' challenges identified by

15  the Preiser Court." Docken, 393 F.3d at 1031. An inmate's claim strikes at the core of habeas

16  corpus when it "attack[s] the very duration of [his] physical confinement itself" and seeks

17  "immediate release or speedier release from that confinement." Preiser, 411 U.S. at 487-88,

18  498. The Ninth Circuit has concluded that a "sufficient nexus" exists, and therefore habeas

19  jurisdiction, where a prison inmate "seek[s] only equitable relief in challenging aspects of [his]

20  parole review that . . . could potentially affect the duration of [his] confinement." Docken, 393

21  F.3d at 1031 (emphasis in original). "The likelihood of the effect on the overall length of the

22  prisoner's sentence . . . determines the availability of habeas corpus." Id. at 1028 (quoting

23  Ramirez, 334 F.3d at 858).

24  Language in Ramirez v. Galaza potentially heightens the standard. Ramirez held that

25  habeas jurisdiction does not exist if a successful petition does not necessarily shorten

26  Petitioner's sentence. See 334 F.3d at 859 ("habeas jurisdiction is absent, and a § 1983 action

27  proper, where a successful challenge to a prison condition will not necessarily shorten the

28  prisoner's sentence."). Subsequently, in Docken the Ninth Circuit explained that such

distinction applied to 28 U.S.C. § 1983 cases, and did not likewise limit habeas corpus cases. <u>Docken</u>, 393 F.3d at 1028.[1]   "<u>Ramirez</u> concerned a challenge to internal disciplinary procedures and the administrative segregation that resulted from it. Ramirez's suit did not deal with the fact or duration of his confinement." <u>See, e.g.</u>, <u>Docken</u>, 393 F.3d at 1030 n.4. <u>Docken</u> rejected the premise that habeas and section 1983 jurisdiction are mutually exclusive. <u>Id.</u> at 1031 ("As outlined above, the question of the relationship between habeas and § 1983 relief has only explicitly come up before in converse form: whether claims are *not cognizable* under § 1983 because their resolution will necessarily impact the fact and duration of confinement. In the only instance where the Supreme Court addressed whether habeas and § 1983 are necessarily mutually exclusive, the suggestion was that they are not. We agree.") (emphasis in original; citations omitted.).

In summary, the Ninth Circuit's discussion of habeas corpus jurisdiction is open to interpretation. However, it is possible that habeas corpus jurisdiction exists if a successful claim could potentially affect the duration of confinement.

    1. <u>Does Petitioner's Gang Validation Affect the Duration of His Confinement?</u>

The Court notes that Petitioner's challenge to his gang validation may not necessarily accelerate his release from prison. Instead, Petitioner will be subject to segregated confinement and other limitations. Federal courts have struggled with whether such clams are cognizable by way of habeas corpus.

The Ninth Circuit, in an unpublished opinion, held that such a claim is not cognizable as it does not affect the duration of a petitioner's sentence as required under <u>Preiser v. Rodriguez</u> and <u>Ramirez v. Galaza</u>. <u>See</u> <u>Burton v. Adams</u>, No. 10-15668 (9th Cir. Feb. 23,

[1] "Thus, although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around." <u>Docken</u>, 393 F.3d at 1028.

1   2011).[2] Further, several district courts have also found that such claims are not cognizable in

2   habeas. See e.g., Burton v. Adams, 2010 U.S. Dist. LEXIS 22960 (E.D. Cal. Feb. 25, 2010);

3   Garcia v. Horel, 2010 U.S. Dist. LEXIS 108720 (N.D. Cal. Sept. 20, 2010); Perez v. McDonald,

4   2011 U.S. Dist.  LEXIS 40449 (E.D. Cal. April 6, 2011).

5   However, other courts have found such claims cognizable. See Flores v. Jacquez, 2010

6   U.S. Dist. LEXIS 106928 at *4 (N.D. Cal. Oct. 5, 2010) ("A further review of California federal

7   cases reveals that the courts have been inconsistent regarding whether a challenge to an

8   indeterminate sentence to administrative segregation based on a gang-validation can be

9   properly addressed in a habeas petition."). For example, in Larriva v. Watson, 2008 U.S. Dist.

10  LEXIS 10287 at *9 (E.D. Cal. Feb. 12, 2008), the court denied such grounds as a basis of a

11  motion to dismiss as the Respondent did not show as a matter of law that the claim could not

12  be presented.  In Waco v. Gonzales, 2010 U.S. Dist. LEXIS 2141 at *14 n2 (C.D. Cal. Jan. 6,

13  2010), the court declined to address whether the claim was foreclosed and proceeded to the

14  merits of the claim. The court reasoned it was possible such placement in segregation could

15  have affected petitioner's release date by affecting his ability to earn good time credits.  Id.

16  Further, in Maldonado v. Scribner, 2008 U.S. Dist. LEXIS 2415 (E.D. Cal. Jan. 11, 2008), the

17  court declined to adopt the recommendation of the magistrate judge to dismiss the petition as

18  the potential deprivation of good time credits provided a possible basis for cognizability. Still

19  other courts have not addressed whether the claim was cognizable, and addressed the merits

20  of the claim. See O'Neal v. Horel, 2009 U.S. Dist. LEXIS 24437 (N.D. Cal. March 13, 2009);

21  Garibay v. Horel, 2011 U.S. Dist. LEXIS 55186 (N.D. Cal. May 24, 2011).

22  As described above, courts have grappled with whether gang validation sufficiently

23  impacts the duration of a petitioner's sentence to present a cognizable habeas claim. Some

24  district courts have found such claims are not cognizable. It is possible, as some courts have

25  found, that the claims are cognizable by way of habeas corpus. Accordingly, this Court finds

26  judicial efficiency dictates that the Court determine the merits of the petition rather than

27

28      [2] While the Ninth Circuit does not prohibit or restrict the citation of unpublished opinions issued after January 1, 2007, such opinions are not precedential. 9th Cir. R. 36-3.

1  continue to struggle with the more difficult issue of the cognizability of Petitioner's claims.

2  **B.    Merits of Petitioner's Claim**

3  1.    Standard of Review

4  Federal courts may review habeas corpus petitions "in behalf of a person in custody

5  pursuant to the judgment of a State court only on the ground that he is in custody in violation

6  of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition

7  may not be granted with respect to any claim that was adjudicated on the merits in state court

8  unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

9  to, or involved an unreasonable application of, clearly established Federal law, as determined

10 by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

11 unreasonable determination of the facts in light of the evidence presented in the State court

12 proceeding." 28 U.S.C. § 2254(d).

13 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

15 of law or if the state court decides a case differently than [the] Court has on a set of materially

16 indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed.

17 2d 389 (2000).

18 "Under the 'unreasonable application' clause, a federal habeas court may grant the writ

19 if the state court identifies the correct governing legal principle from [the] Court's decision but

20 unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal

21 habeas court may not issue the writ simply because that court concludes in its independent

22 judgment that the relevant state-court decision applied clearly established federal law

23 erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

24 federal habeas court making the "unreasonable application" inquiry should ask whether the

25 state court's application of clearly established federal law was "objectively unreasonable." Id.

26 at 409.

27 ///

28 ///

U.S. District Court
E. D. California

-6-

1

       2.     No Clearly Established Federal Law Protects Petitioner's Claimed Right

2       "Clearly established federal law, as determined by the Supreme Court of the United

3 States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as

4 of the time of the relevant state-court decision." Williams, 529 U.S. at 412; Norris v. Morgan,

5 622 F.3d 1276, 1285 (9th Cir. 2010). If there is no Supreme Court precedent that controls on

6 the legal issue raised by a petitioner in state court, the state court's decision cannot be

7 contrary to, or an unreasonable application of, clearly-established federal law. Carey v.

8 Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).

9       The Supreme Court holdings on prisoners' rights in administrative segregation

10 placement decisions are quite limited and are most recently found in Sandin v. Conner, 515

11 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), which set out the criteria for determining

12 whether there is a protected liberty interest, and Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct.

13 2384, 162 L. Ed. 2d 174 (2005), which held that an indefinite placement in a harsh

14 administrative segregation unit deprived inmates of a protected liberty interest; the latter case

15 also summarized the procedural protections for such a deprivation that already had been

16 identified by the Supreme Court.

17       The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution

18 protects individuals against governmental deprivations of life, liberty or property without due

19 process of law. Deprivations closely related to the expected terms of confinement may amount

20 to deprivations of a procedurally protected liberty interest, provided that state statutes or

21 regulations narrowly restrict the power of prison officials to impose the deprivation and that the

22 liberty in question is one of "real substance." Sandin v. Conner, 515 U.S. at 484-87. An

23 interest of "real substance" generally will be limited to freedom from restraint that imposes

24 "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

25 life" or "will inevitably affect the duration of [a] sentence." Id. The Supreme Court later held that

26 indefinite placement in a restrictive "supermax" facility, where inmates are not eligible for

27 parole consideration, imposes an "atypical and significant hardship within the correctional

28 context." See Wilkinson, 545 U.S. at 223-25.

When placement in administrative segregation implicates a protected liberty interest, the next step is to determine what process is due. In Wilkinson, the Court explained that administrative segregation placement requires less procedure "than in cases where the right at stake is the right to be free from confinement at all." Wilkinson, 545 U.S. at 225 (referring to the requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). "Where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in [Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 15, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), and Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)], provide the appropriate model." Wilkinson, 545 U.S. at 228-29. In Greenholtz, the Court had determined that the level of process due in parole suitability decision included an opportunity to be heard and notice of any adverse decision; in Hewitt, the Court had determined that the level of process due for inmates being transferred to administrative segregation included some notice of the charges and an opportunity to be heard. Wilkinson, 545 U.S. at 229. "[T]hese cases remain instructive for their discussion of the appropriate level of procedural safeguards." Id. Accordingly, the "clearly established federal law" for purposes of § 2254(d) requires that an inmate being transferred to administrative segregation that amounts to an atypical and significant hardship must be provided with (1) notice of the charges or reasons such placement is being considered, (2) an opportunity to be heard, and (3) notice of any adverse decision.

The Supreme Court has not held that the procedural protections include any evidentiary sufficiency requirement for the decision to place an inmate in administrative segregation. In a prison disciplinary hearing, due process requires that there be an evidentiary basis for the prison officials' decision. See Superintendent v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced). The Supreme Court has not extended Superintendent v. Hill to the administrative segregation placement context. Cf. Swarthout v.

Cooke, 131 S. Ct. 859, 862, 178 L. Ed. 2d 732 (2011) (implicitly declining to find, for purposes of section 2254(d) habeas analysis, that constitutional protections required for parole denial included any evidentiary sufficiency requirement). While not required based on Supreme Court precedent, the Ninth Circuit and district courts within the circuit have applied the "some evidence" standard to an inmate's placement in Secured Housing Unit ("SHU") for gang affiliation. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003).

3.  Petitioner Received His Constitutionally Protected Procedural Rights

Based on the law as described above, Petitioner has a protected liberty interest at issue with regard to indefinite placement in SHU housing. SHU conditions are severe and may affect a Petitioner's eligibility for parole. Accord Wilkinson, 545 U.S. at 224 (necessity of harsh conditions in light of danger that high-risk inmates pose to prison officials and other inmates does not diminish "conclusion that conditions give rise to a liberty interest in their avoidance"). The potential to spend years in the harsh conditions of the SHU presents an atypical and significant hardship and therefore amounts to a deprivation of a protected liberty interest.

In light of the absence of Supreme Court authority imposing any evidentiary sufficiency requirement or any requirement for the reliability of evidence, federal habeas relief cannot be granted to Petitioner on the basis of a claim that the placement decision is based on insufficient evidence or evidence that lacks sufficient indicia of reliability. Much of Petitioner's claims relate to the sufficiency of the evidence used by the institutional gang investigator at California Correctional Institution Tehachapi to find Petitioner as an associate of the Mexican Mafia (EME) Prison gang. (See Pet. at 4-6.) Petitioner's due process claim based on sufficiency and reliability of the evidence therefore must be denied.

4.  Some Evidence Supported the Administrative Decision

Assuming Superintendent v. Hill did apply to an administrative segregation placement decision, Petitioner's claim fails.  Sufficient evidence exists to support the decision to validate him as a gang associate. (Pet. at 82-107.) Five pieces of evidence were used by prison officials to conclude that Petitioner met the criteria for validation as an associate of the EME prison gang. The five pieces of evidence - individually and collectively - provided some

1   evidence to support the validation decision. According to the investigative report, the decision

2   was based on evidence in the form of a confidential informant identifying petitioner as a 'shot

3   caller' for the gang, written communications from a fellow gang member indicating Petitioner

4   as a gang member, written communications from Petitioner describing his association with the

5   gang, and another report from a confidential informant identifying Petitioner as trafficking

6   narcotics for another gang member. (Pet. at 50.) The Kern County Superior Court found one

7   source to be duplicative and another too old to be considered reliable. However, the court

8   found three reliable sources upon which to validate the gang association. Determinations of

9   a factual issue by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). While

10  Petitioner claims that the evidence relied upon did not meet the requirements of the relevant

11  California Code of Regulations, he does not explain how the evidence is otherwise unreliable.

12  See 15 Cal. Code Regs. § 3378.

13          Thus, even if Superintendent v. Hill's some evidence requirement was a constitutionally

14  required procedural protection for administrative segregation placement, the California court's

15  rejection of his due process claim would not have been not contrary to or an unreasonable

16  application of such requirement. Petitioner is not entitled to relief on this claim. As it appears

17  not tenable claims for relief can be pleaded the claim shall be dismissed without leave to

18  amend. Jarvis, 440 F.2d 13, 14.

19  **III.   CONCLUSION**

20          As explained above, while Petitioner's claim is potentially cognizable in federal habeas,

21  the claim fails on the merits and must be denied as Petitioner received constitutionally

22  adequate safeguards at his gang validation proceeding. The Court therefore orders that the

23  petition be summarily dismissed.

24  **IV.   CERTIFICATE OF APPEALABILITY**

25          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal

26  a district court's denial of his petition, and an appeal is only allowed in certain circumstances.

27  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining

28  whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(a)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

> (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED:

1     1) The petition for writ of habeas corpus is DISMISSED with prejudice;

2     2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3     3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   June 15, 2012         /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE